**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Cleveland McGOWAN,
Defendant-Appellant.**

**No. 43115.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 15, 1981.

**558**

Robert J. Thomas, Jr., St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

GUNN, Judge.

Defendant appeals his conviction for second degree murder. His appeal alleges trial court error in overruling his motion for judgment of acquittal, contending that there was insufficient evidence to find that he had intended to kill the deceased or that he had not acted in self-defense. We affirm.

In considering the allegations of error, we accept the state's evidence as true and give it the benefit of all reasonable inferences deducible therefrom, disregarding all evidence and inferences to the contrary. *State v. Ludwig*, 609 S.W.2d 417, 417–18 (Mo. 1980); *State v. Brueckner*, 617 S.W.2d 405, 410 (Mo.App.1981). It is not our function to substitute our judgment for that of the jury. Rather, we must determine only whether there was substantial evidence from which the jury could reasonably reach its conclusion. *State v. Clark*, 596 S.W.2d 747, 749 (Mo.App.1980). With these precepts in mind, we review the facts, necessarily in some detail.

The victim, Willie Birdo, lived with his sister, Mattie Smith, and other family members on the ground floor of a north St. Louis two-story flat. The defendant lived with his wife and grandson on the second floor. On the afternoon and evening of the killing, defendant and Birdo did some drinking together. What began as some playful gambol between them became rather serious, primarily over a $6.00 debt one apparently owed to the other. Strong vituperatives passed back and forth between the two, and Mattie Smith finally intervened as defendant commenced choking Birdo. Defendant then returned to his upstairs residence.

About midnight, defendant returned to Mattie Smith's and Birdo's apartment, defiant and cursing and demanding to see Birdo. A struggle ensued, with Birdo trying to push defendant out the door. Again, Mattie Smith intervened and defendant went upstairs threatening to return. About 2:00 a. m. defendant made a telephone call from his apartment and talked to both Mattie Smith and Birdo. When the telephone conversation ended, Birdo left his apartment and began climbing the stairs to defendant's. From the top of the stairs, defendant told Birdo to stop—a request that was ignored. As Birdo approached the top, defendant fired his shotgun striking Birdo in the abdomen. He reloaded the shotgun and fired again, once more hitting Birdo, who died as a result of the shotgun blast to his groin and lower abdominal area.

Later in the day of the killing police located defendant at his wife's daughter's residence. While being given his *Miranda* warnings, defendant interrupted police with strong language that he had shot Birdo and wished that he had shot him in the face. He directed police to the death weapon.

At trial, defendant admitted the shooting but contended that he had shot in fear; that he was afraid of Birdo. Though defendant saw nothing in Birdo's hand, he observed it by his side and knew that the victim usually possessed a pocket knife.

Defendant contends first that the trial court erred in denying his motions for judgment of acquittal on the ground that there

was insufficient evidence that he possessed the intent necessary for a second-degree murder conviction.

To establish second-degree murder the state must prove beyond a reasonable doubt a willful, premeditated killing of a human being with malice aforethought. *State v. Black*, 611 S.W.2d 236, 239 (Mo. App.1980); *State v. McCall*, 602 S.W.2d 702, 707 (Mo.App.1980). Premeditation exists if defendant thought beforehand, however briefly, about his prospective actions. *State v. Strickland*, 609 S.W.2d 392, 394 (Mo.banc 1980); *State v. Little*, 601 S.W.2d 642, 643 (Mo.App.1980). As an element of second-degree murder, malice means the intentional commission of a wrongful act without just cause or excuse; it does not mean spite or ill will. *State v. Mosley*, 415 S.W.2d 796, 798 (Mo.1967); *State v. Cook*, 557 S.W.2d 484, 485 (Mo.App.1977). The intent to kill need not be proved by direct evidence. It can be inferred from defendant's actions and the circumstances. *State v. Royal*, 610 S.W.2d 946, 952 (Mo. banc 1981); *State v. Little*, 601 S.W.2d at 643. Intent to kill may be presumed where there has been a killing through the use of a deadly weapon on a vital part of the deceased's body. *State v. Strickland*, 609 S.W.2d at 394; *State v. Little*, 601 S.W.2d at 643.

We find ample evidence from which the jury reasonably could conclude that defendant intended to kill Birdo. Defendant shot Birdo in a vital part—the abdomen—with a deadly weapon. Further evidence of intent includes defendant's midnight demand in Ms. Smith's apartment to see Birdo and his threats, upon departing, to return; defendant's firing of two shots, reloading the gun between shots [*State v. Harrell*, 383 S.W.2d 554, 555–56 (Mo.1964); *State v. Thomas*, 595 S.W.2d 325, 328 (Mo.App. 1980)]; and defendant's admissions to the police at the time of his arrest that he shot Birdo and wished that he had shot him in the face. [*State v. Gregg*, 399 S.W.2d 7, 10 (Mo.1966)].

Defendant asserts also that there was insufficient evidence to support the jury finding that he did not act in self-defense.

The elements of self-defense in a homicide case are the absence of aggression or provocation on the part of the defendant, a real or apparently real necessity to kill to save himself from an immediate danger of serious bodily injury or death, reasonable cause for belief in such necessity, and the defendant's doing all within his power consistent with personal safety to avoid the danger and the need to take life. *State v. Grier*, 609 S.W.2d 201, 203 (Mo.App.1980); *State v. Ivicsics*, 604 S.W.2d 773, 776 (Mo. App.1980). Of course, there is no duty to retreat when the defendant is in his own home. *State v. Neria*, 526 S.W.2d 396, 398 (Mo.App.1975). And once defendant makes a prima facie showing of the elements of self-defense, the burden is on the state to prove beyond a reasonable doubt the absence of this justification. *State v. Grier*, 609 S.W.2d at 203. Generally, it is properly left for the jury to decide the reasonableness of defendant's belief that deadly force was necessary. *State v. Eskina*, 606 S.W.2d 270, 271 (Mo.App.1980).

The self-defense issue was properly submitted for jury determination and resolved against defendant. From the evidence, the jury could have found that Birdo was not displaying any weapon and that shooting him with a shotgun, reloading and shooting again was not necessary to halt him in his advance up the stairs, particularly as defendant had physically bested him in a previous encounter, despite size differentials. There was sufficient evidence to support the jury's conclusion that the killing was not the result of lawful self-defense.

Judgment affirmed.

CRIST, P. J., and SMITH, J., concur.